A98A1864. JOHNSON v. THE STATE.
(511 SE2d 603)

POPE, Presiding Judge.

Keith Johnson appeals his convictions for armed robbery (OCGA § 16-8-41), aggravated battery (OCGA § 16-5-24), and aggravated assault (OCGA § 16-5-21). We affirm.

The evidence at trial, viewed in the light most favorable to the jury's verdict, showed that around 9:00 p.m., on December 12, 1993, 64-year-old Peggy Hanley was brutally assaulted and robbed as she withdrew cash from an automatic teller machine at the First Union Bank in the North Springs Shopping Center in Fulton County. Hanley was cut with a knife during the assault, and the wounds left permanent, disfiguring scars across her neck, hands, and arms. Shortly after the attack, a passer-by came to Hanley's aid and called the police. Though in a state of shock, Hanley was able to give the responding officer a description of her attacker as a "light black male, with short hair, very tall, and without much facial hair." The next day, following a news account of the attack, a witness came forward with additional information. The witness testified that she had been in the North Springs Shopping Center the night before and had seen a man who appeared "quite nervous," "fidgeting" and "acting very erratically." The man was intently watching the bank area. The witness got a good view of the man because he was standing beneath a security light. When the man realized he was being watched, he ran off. The witness was able to add to Hanley's description, noting that the man had "very heavy eyebrows" and peculiar ears, one which stuck out and the other which appeared curled. The witness worked with the police to develop a composite drawing of the man she had seen.

Detective Hendrix of the Fulton County Police Department supervised the investigation of Hanley's robbery. A few months after the attack, Detective Hendrix received information about an ATM robbery in Cobb County. He obtained a photograph of the Cobb County suspect and included it in photographic lineups to show Hanley and the witness. Hanley immediately selected Johnson's photograph and, without hesitation, identified him as her attacker. Hanley also identified Johnson at trial. Detective Hendrix prepared a different lineup for the witness to view. The witness also immediately selected Johnson's photograph, and she identified him at trial.

After his arrest, Johnson was taken to the Fulton County jail

where he was interviewed by Detective Hendrix. Johnson told Detective Hendrix that during the month of December 1993 he was a crack addict, that he was unemployed, and that because of his addiction he had no memory of the events of that month.

The state also presented evidence of the Cobb County robbery as a similar transaction. Shortly after 5:00 p.m. on March 14, 1994, 61-year-old Jack Gibb was robbed while at an ATM at the R. K. Plaza shopping center. Gibb was robbed by a tall man in his mid-20s who was wielding a West German R.G. .22 caliber revolver, a weapon Gibb recognized from his 40 years of buying and trading firearms. The man snatched Gibb's money and ran to a brown and tan Cadillac parked nearby. Gibb observed the robber get into the back seat of the car. The driver, who was wearing a white shirt, then backed the car toward Gibb, giving him the opportunity to write down the car's tag number. Gibb also observed a third person in the car. He was not, however, able to identify his attacker.

Late that evening, Cobb County police officers were able to locate the registered owner of the Cadillac from the information Gibb supplied. The officers learned that the car had been recently sold to Clarence Phillips who was buying the car for his nephew, Johnson. The officers went to Johnson's address in the Linden Club Apartments in College Park. Shortly after they arrived, the officers spotted the Cadillac entering the apartment complex. They followed it until the driver parked the car. The officers turned on their blue lights and initiated a traffic stop. Three men were in the car. After getting these men out of the car, the officers found two handguns on the front passenger floorboard, a .38 caliber revolver and an R.G. .22 caliber revolver. Johnson was driving the car. The man in the passenger seat was wearing a light-colored shirt. Upon patting Johnson down for weapons, the officer discovered a cigarette box containing 11 small bags of crack cocaine.

Johnson told the officers that he had spent the entire day at his girlfriend's apartment, located in the building in front of which they were standing. He also told the officer that he had loaned his car earlier in the evening to a person he could identify only as "my nigger." Johnson said he owned the .38 found in the car, but that he had never seen the .22 before. Johnson claimed that the he did not know the man in the front passenger seat of the car and that he was someone they had just picked up. When the officer said he was going to verify that information with the girlfriend, Johnson got very upset and started yelling that the officer could not knock on the door without a search warrant. The officer went to the girlfriend's apartment and met a woman who identified herself to the officer as Muna White, Johnson's girlfriend. She informed the officer that Johnson had been away from the apartment since about 5:00 p.m. She also

told the officer that the person who was in the front seat of the car with Johnson was his good friend, Marcus Head. Based on this information and the fact that the car was registered to Johnson, the officers arrested Johnson.

1. Johnson raises several enumerations of error related to the admission of similar transaction evidence.

(a) First, Johnson contends the trial court erred in admitting the Cobb County similar transaction because the evidence was insufficient to establish that the defendant committed the independent act and because the independent act was not sufficiently similar to satisfy the requisites of *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). We disagree.

A defendant does not have to be positively identified as the perpetrator of a similar transaction. Rather, circumstantial proof may be used to establish his connection to it. *Staten v. State*, 219 Ga. App. 536, 537 (466 SE2d 20) (1995). And, that connection does not have to be proven beyond a reasonable doubt. *Martin v. State*, 198 Ga. App. 488-489 (402 SE2d 95) (1991). In this case, we are satisfied that the state offered proof sufficient to show that Johnson was a party to the independent crime. Johnson was stopped within six hours of the robbery driving a Cadillac identified as the getaway car and owned by him. The robbery victim saw three men in the Cadillac and observed that the driver was wearing a white shirt. Johnson was stopped in the company of two other men, one of whom was wearing a light-colored shirt. The unusual handgun used in the robbery was found in the front passenger floorboard, near Johnson. Police also discovered that Johnson, a self-professed crack addict, had a quantity of cocaine in his possession — which a jury could infer was purchased with the proceeds of the robbery.

Also, as we have explained, "[t]he similar transaction does not have to be identical to the crime for which the defendant stands accused. In fact, the admissibility of a similar transaction is not dependent on the number of similarities between the prior act and the crime charged. Rather, admissibility turns on whether the similarities tend to show that the prior act is relevant to a proper issue at trial. [Cits.]" *Callaway v. State*, 230 Ga. App. 369 (1) (496 SE2d 349) (1998). In this case, the state showed the following similarities between both crimes: the victims were older, a deadly weapon was used in the attacks, the attacks occurred at an outdoor ATM, the attacks occurred after normal business hours when the banks were closed, the attacks occurred in commercial shopping areas, the victims were alone, and the attacker initiated physical contact with the victims after the victims received cash from the ATM. The state offered this evidence to show identity, course of conduct, and bent of mind. We find that the similar transaction was substantially rele-

vant to establish these factors and thus was not admitted simply to malign Johnson's character. See *Freeman v. State*, 232 Ga. App. 715, 716 (505 SE2d 836) (1998).

(b) Johnson contends the trial court should have given, sua sponte, a limiting instruction immediately prior to the admission of the State's similar transaction evidence. However, "[d]efense counsel did not request limiting instructions at [that point] in the trial and, in the absence of a request, a trial court has no obligation to give a contemporaneous limiting instruction on similar transaction evidence." *Smith v. State*, 270 Ga. 68, 69-70 (3) (508 SE2d 490) (1998).

(c) Johnson also argues that the trial court should have given, sua sponte, within its similar transaction charge a charge on circumstantial evidence tracking OCGA § 24-4-6. Johnson argues that the court's failure to include such language rendered the similar transactions charge incomplete and thus inadequate. However, because Johnson failed to request such a similar transaction charge, the alleged error is not preserved for our review. *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998). Contrary to Johnson's assertion, a request to charge was required because the case against him was not wholly circumstantial. *Livery v. State*, 233 Ga. App. 882, 885 (3) (506 SE2d 165) (1998). (With respect to the trial court's failure to charge on circumstantial evidence in general, see Division 3 below.)

2. The trial court did not err in admitting a police officer's testimony that Johnson possessed cocaine when he was arrested for the Cobb County similar transaction. Absent a showing that Johnson's cocaine possession was relevant to an issue at trial, it would be inadmissible evidence of bad character. *Sessions v. State*, 207 Ga. App. 609, 610 (2) (428 SE2d 652) (1993). Here, however, Johnson told police that he was a crack addict and could not remember anything he did during the month Hanley was robbed. Johnson was also unemployed. Those facts, taken in conjunction with the evidence that Johnson was found in possession of cocaine shortly after Gibb was robbed, provided the logical evidentiary basis for the State's argument that Johnson robbed Hanley for cash to feed a drug habit. Thus, the evidence was relevant to show Johnson's motive and bent of mind. See, e.g., *Edmond v. State*, 267 Ga. 285, 288 (4) (476 SE2d 731) (1996); *Ingram v. State*, 232 Ga. App. 802 (503 SE2d 70) (1998); *Carruth v. State*, 182 Ga. App. 786, 787 (2) (357 SE2d 122) (1987).

3. In his sixth enumeration of error, Johnson contends the trial court erred by failing to give his requested jury charge on the law of circumstantial evidence as stated in OCGA § 24-4-6. "The failure to charge on circumstantial evidence as set forth in OCGA § 24-4-6 is not harmful or erroneous as a matter of law where there is some direct evidence and the jury is properly charged on reasonable doubt, absent a request for such charge. Accordingly, when the State's case

includes both direct and circumstantial evidence, a defendant is not relieved of the necessity of requesting the charge and, in the absence of such a request, it is not error to fail to give it. [Cit.]" *Livery v. State,* 233 Ga. App. at 885 (3). Here, Johnson requested a charge patterned after OCGA § 24-4-6 on circumstantial evidence. Since the State's case against Johnson "consisted of both direct and circumstantial evidence, the trial court erred in failing to give the requested charge. However, as indicated in *Mims v. State,* 264 Ga. 271, 273 (443 SE2d 845) (1994), this error is not automatically harmful." *Livery,* 233 Ga. App. at 885 (3).

The error in this case was rendered harmless by the overwhelming direct evidence of Johnson's guilt, namely the positive identifications given by the victim and the witness who observed Johnson shortly before the robbery. Both the victim and the witness had unobstructed, well-lighted views of Johnson, whose face was described as rather unique. Both the victim and the witness were able to pick Johnson out of a photographic lineup without any hesitation. Johnson admitted upon his arrest that he was an unemployed crack addict, establishing a motive for the robbery. Johnson admitted he had no memory of the entire month of December. Moreover, when he was finally arrested, he possessed crack cocaine. This evidence and all reasonable deductions therefrom are inconsistent with a reasonable hypothesis of innocence. "To reverse this conviction would be a perversion of justice." (Punctuation omitted.) *Cornish v. State,* 219 Ga. App. 884, 885 (1) (466 SE2d 919) (1996).

4. Although the trial court erred in permitting the arresting officer to testify as to statements made by Johnson's girlfriend, Muna White, we find the error harmless.

White's statements were offered for the truth of the matter asserted and were used to show that Johnson lied to officers regarding his whereabouts. The court admitted White's hearsay statements over Johnson's objection under OCGA § 24-3-2 to explain the officer's decision to arrest Johnson and to show a step in the events leading to Johnson's subsequent identification as a suspect in the Fulton County case. In this case, though, the officer's conduct was not relevant to any issue at trial. Compare *Render v. State,* 267 Ga. 848, 849 (2) (483 SE2d 570) (1997) (officer's decision to proceed with murder investigation based on witness statements held not relevant) with *Holmes v. State,* 266 Ga. 530, 531 (2) (468 SE2d 357) (1996) (officer's decision to take fingerprints from specific location based on witness statements held relevant). Consequently, White's statements should not have been admitted as original evidence. However, "in order to justify a new trial or reversal, the trial court's ruling must be both erroneous and harmful to the appellant." (Punctuation omitted.) *Wright v. State,* 226 Ga. App. 499, 500 (2) (486 SE2d 711) (1997).

"The test for harmful error is whether it is 'highly probable' that the error contributed to the judgment." *Head v. State*, 220 Ga. App. 281, 283 (3) (469 SE2d 406) (1996). We do not believe that White's statements, which were offered only in connection with the similar transaction, contributed to the judgment because the State's testimony more than sufficed to establish Johnson's identity as Hanley's attacker. See id.

5. The trial court did not err in granting the State's motion in limine to exclude expert testimony offered by Johnson on the issue of the reliability of eyewitness testimony. "The law generally disallows expert testimony regarding inaccuracies in eyewitness identification. The determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury." (Citations and punctuation omitted.) *Sawyers v. State*, 211 Ga. App. 668, 669 (3) (440 SE2d 256) (1994).

*Judgment affirmed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1999 — 

*Megan C. DeVorsey*, for appellant.
*Paul L. Howard, Jr., District Attorney, David E. Langford, Assistant District Attorney*, for appellee.